93 A.3d 806

David J. MEYER, Dallas Berry, Charles J. Brown, Jeremy Lee Fox, Martin Gorecki, Anthony J. Hollibaugh, Lisa L. Salyers, Rochell Sykes, Joseph W. Vucick, David L. Wigley, Dennis W. Woodley, Chris Mack and Tammy Muslo, Appellees

v.

COMMUNITY COLLEGE OF BEAVER COUNTY, Appellant.

Timothy L. Barr, John J. Battaglia, Mark Brown, Chris Ferragonio, Craig P. Fraser, Matt Fraser, Ivan Glenz, Justin Haffey, Steve Hall, Dustin Huff, Joseph A. Kanai, Michael Keally, Stephen E. Kusma IV, William J. Latuszewski, John Kurt Leitschaft, Bob Masilon, Michael Matzie, Alexis M. Miller, Joseph A. Musser, Timothy Poland, Brian A. Sales, Matthew J. Temple, Torie Tyson, Jared Unen, Dale A. Valenson, Mark C. Williams and Amy M. Zimmel, Appellees

v.

Community College of Beaver County, Appellant.

Supreme Court of Pennsylvania.

Argued April 10, 2013.

Decided June 16, 2014.

564

Anthony G. Sanchez, Esq., Andrews & Price, for Community College of Beaver County.

Steven Keith Ludwig, Esq., Fox Rothschild, L.L.P., Philadelphia, for The Pennsylvania Commission for Community Colleges.

Thomas Simon Anderson, Esq., Mark F. Fischer, Esq., John P. Liekar Jr., Esq., Pittsburgh, Yukevich Marchetti Liekar & Zangrilli, P.C., for David J. Meyer, et al.

Thomas Simon Anderson, Esq., Mark F. Fischer, Esq., John P. Liekar Jr., Esq., Pittsburgh, Yukevich Marchetti Liekar & Zangrilli, P.C., for Timothy L. Barr, et al.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice TODD.

In this appeal, we consider whether the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201–1 *et seq.*, defines a "person" subject to liability as including both private entities and political subdivision agencies. After careful review, we hold that the UTPCPL defines a "person" as including private entities, but not political subdivision agencies. Accordingly, we reverse the Commonwealth Court's order affirming the trial court's denial of partial summary judgment on this issue and remand to the Commonwealth Court for further proceedings.

## I. BACKGROUND

Community College of Beaver County ("CCBC") is a Beaver County, Pennsylvania political subdivision agency that, in exchange for tuition and fees, offers a variety of post-secondary educational services. Appellees are former CCBC students who, according to their allegations, enrolled in and completed substantial work in CCBC's police training program. However, their academic progress was cut short when, in 2002, CCBC's alleged malfeasance caused state officials to decertify the program, thereby rendering their educational and financial investments largely worthless. Appellees filed actions in the Court of Common Pleas of Beaver County, asserting claims of breach of contract, breach of warranty, and, pertinent to this appeal, a claim under the UTPCPL's provisions providing a private cause of action for "persons" injured by other "persons" employment of unfair trade practices. *See* 73 P.S. § 201–9.2.[1] After the close of pleadings and discovery, CCBC sought summary judgment with respect to the UTPCPL claims on two grounds. First, noting that the UTPCPL provides a cause of action against "persons," CCBC observed that the statute defines a "person" as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities," *see* 73 P.S. § 201–2(2), and argued this definition excluded community colleges. Second, CCBC maintained that the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541 *et seq.*, provided it immunity from all statutory liability, including UTPCPL liability, not

1. Section 201–9.2 provides, in pertinent part:

§ 201–9.2 *Private actions*

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [73 P.S. § 201–3] may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a).

contained within the Tort Claims Act's enumerated exceptions. After a hearing on the matter, the trial court denied relief, and CCBC timely filed a permissive interlocutory appeal to the Commonwealth Court.

Initially, the Commonwealth Court reversed, declining to decide whether the UTPCPL permits actions against community colleges, but agreeing with CCBC's position that the Tort Claims Act provided it immunity from all statutory liability not expressly exempted. *Meyer v. CCBC*, 965 A.2d 406 (Pa. Cmwlth.2009) (*en banc*); *Barr v. CCBC*, 968 A.2d 235 (Pa. Cmwlth.2009) (*en banc*). Appellees timely sought allowance of appeal, and this Court granted review, ultimately holding that the Tort Claims Act provides immunity for statutory liability sounding in tort, but not in contract, and remanding for further proceedings. *Meyer v. CCBC*, 606 Pa. 539, 2 A.3d 499 (2010).

On remand, the Commonwealth Court affirmed the trial court's order denying summary judgment. *Meyer v. CCBC*, 30 A.3d 587 (Pa.Cmwlth.2011) (*en banc*). In a majority opinion authored by Judge Simpson, the court reviewed the UTPCPL's definition of "person," and, ultimately, found its use of the phrase "any other legal entities" rendered it ambiguous as to the inclusion of political subdivision agencies, such as community colleges. Accordingly, attempting to resolve the ambiguity, the court employed canons of statutory construction in order to discern legislative intent. Specifically, the Court reviewed the UTPCPL's public and private enforcement action provisions and, noting that only a "person" may seek relief as a plaintiff from others' employment of unfair trade practices, the court held that interpreting "person" to exclude political subdivision agencies would be absurd, contrary to the UTPCPL's purpose, and contrary to the public interest:

> [A] construction under which a local agency is not a plaintiff "person" results in the inability of local agencies to recover restoration ... to participate with general creditors ... and to bring suit and recover damages, treble damages, costs and attorneys fees.... Thus, local agencies harmed by

violations of the [UTP]CPL would have significantly fewer remedies than other legal entity plaintiffs. Concomitantly, those violating the [UTP]CPL have more limited liability if a local agency is a victim. How such a construction is in the public interest is unclear.

Moreover, the absurdity of such a construction is most evident with regard to [the] [s]ections ... of the [UTP]CPL ... which deal with suits in the public interest. Section 4 authorizes the Attorney General or district attorney to bring an action in the name of the Commonwealth to restrain practices in violation of the [UTP]CPL where proceedings would be in the public interest. Section 4.1 applies where such an injunction is entered, and it allows a court to also restore money or property "to any person in interest." Section 8(b) also applies to actions brought under Section 4 in the public interest, and it provides for recovery by the Commonwealth of civil penalties in certain circumstances. These provisions expressly authorize the Commonwealth to be a party plaintiff and to recover civil penalties in certain circumstances.

A construction under which a local agency is not a plaintiff "person" results in the inability of a local agency to recover past lost sums under Section 4.1. This is true even if suit brought in the public interest is successful and prospective injunctive relief is granted. In short, even where suit in the public interest is successful, a local agency would have no retrospective remedy, only a prospective remedy. Such a result is indefensible, clearly not in the public interest, and inconsistent with our charge to liberally construe the [UTP]CPL to achieve its objectives.

*Id.* at 594–95 (footnotes omitted). Likewise, observing that only a "person" may be held accountable as a defendant for engaging in unfair trade practices, the court reasoned that a rule excluding political subdivisions from the definition of person

unnecessarily restricts the rights of ordinary consumers or other legal entities to recover against local agencies should agency practices be unfair or deceptive so as to violate the

[UTP]CPL. Such a construction is not consistent with our charge to liberally construe the [UTP]CPL to achieve its objectives.

*Id.* at 595. In so holding, the Court rejected CCBC's argument that it was required to apply an interpretive presumption against imposing liability on governmental agencies. *Id.* Although conceding that, in some cases, Pennsylvania courts have applied such a presumption, given the UTPCPL's unique provisions and purpose, as well as public policy, the court declined to apply it in the instant context. *Id.*[2]

In a concurring opinion, Judge McCullough disagreed with the majority's analysis, but ultimately agreed that the UTPCPL's purpose and public policy required the court to interpret the term "person" to permit private actions against political subdivision agencies. *Meyer,* 30 A.3d at 611–12 (McCullough, J., concurring). Like the majority, Judge McCullough rejected CCBC's argument that the court was required to presume the exclusion of governmental agencies, albeit on different grounds. Specifically, Judge McCullough observed that, in each of the cases cited by CCBC, the court had applied the presumption against imposing liability on governmental agencies to state-level agencies, and not to political subdivision agencies, which, she noted, our law treats as distinct in numerous contexts. *Id.* at 612–14 (citing, *inter alia, Northampton Cty. Area Cmty. College v. Dow Chemical,* 389 Pa.Super. 11, 566 A.2d 591 (1989)) (holding that a community college could not assert sovereign's defense of *nullum tempus occurrit regi*[3] to preclude application of a statute of limitations).

Judge Pellegrini filed a dissenting opinion, wherein he agreed that the UTPCPL's definition of "person" included political subdivision agencies, but noted that the UTPCPL also

2. The court also concluded that Appellees' UTPCPL claims sounded in contract law, such that the Tort Claims Act did not apply. *Meyer,* 30 A.3d at 600. CCBC sought, but this Court denied, review from that determination.

3. "Time does not run against the King." *Northampton Cty.,* 566 A.2d at 593.

requires that a private action defendant be engaged in "trade or commerce," and indicated his view that this requirement foreclosed liability for agencies, which are never engaged in trade or commerce:

> "Trade or commerce" is mercantile activity in which the person engaged in that business is doing so for private profit which could motivate unfair or deceptive practices for private gain or, more accurately, private greed.... The Community College is ... carrying out a public responsibility with tax dollars to provide students with an affordable education ... In other words, when a governmental entity is carrying out a public duty, it is not engaged in the conduct of a trade or commerce, but in the conduct of government.

*Id.* at 601–02 (Pellegrini, J., dissenting).[4]

Judge Leavitt also dissented, opining that the UTPCPL's definition of person was not intended to include political subdivision agencies. *Id.* at 602 (Leavitt, J., dissenting). First, noting that, in other statutory contexts, the legislature has specifically included such agencies, she reasoned that it could and would have done so in the UTPCPL if it sought to subject them to liability. *Id.* at 602–03 (citing, *inter alia,* The Controlled Substance, Drug, Device, and Cosmetic Act, 35 P.S. §§ 780–101 *et seq.;* the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.;* and the Clean Streams Law, 35 P.S. § 691.1 *et seq.*) Next, Judge Leavitt noted that, pursuant to the interpretive canon of *ejusdem generis,* "general expressions used in a statute are restricted to things ... similar to those specifically enumerated in the language preceding the general expressions." *Id.* at 603 (quoting *Petty v. Hosp. Serv. Ass'n of Ne. Pa.,* 611 Pa. 119, 23 A.3d 1004, 1009 (2011)). Thus, observing that the enumerated entities are all private entities, Judge Leavitt reasoned "any other legal entities" should be construed to include only other *private* legal enti-

---

4. Judge Pellegrini also concluded that Appellees claims sounded in tort, not contract, and that, consistent with our earlier decision in this matter, the Tort Claims Act provides CCBC immunity. *Meyer,* 30 A.3d at 601 (Pellegrini, J., dissenting).

ties, such as limited liability companies. *Id.* at 603. Finally, Judge Leavitt offered her view that the General Assembly could, and did, reasonably decide to exclude government agencies because, unlike consumers, governmental entities are unlikely to be victimized by deceptive practices, and, unlike ordinary commercial firms, they were constrained by various legal restrictions that ensured fairness and transparency, such as the federal civil rights lawsuits, the Right–to–Know Law, and the Due Process Clauses of the federal and state constitutions, thereby rendering UTPCPL liability less important as a deterrent. *Id.* at 608–09.

Finally, Judge Brobson authored a dissent, wherein he noted his preference for a more "holistic approach" to statutory construction, ultimately observing that, pursuant to the majority's interpretation, governmental entities would be subject to damages, including potential treble damages, costs, and fees. He further indicated that, given its specific enumeration of private entities, he was "loathe to construe" the statute's use of the phrase "other legal entities" to include public agencies and, thereby, subject them to such damages. *Meyer*, 30 A.3d at 609–10 (Brobson, J., dissenting). He further suggested that the majority's interpretation, in permitting private citizens to sue public agencies, improperly favored private interests over public interests. *Id.* (citing 1 Pa.C.S.A. § 1922(5)).

CCBC timely sought allowance of appeal, and this Court granted review, limited to the issue of whether the UTPCPL's definition of "person" includes political subdivision agencies, such as community colleges.

## II. DISCUSSION

Prior to the enactment of the UTPCPL, common law contract and warranty theories largely presumed that a consumer and merchant stand at arms-length in reaching their bargain, failing to recognize that the average consumer relies in great part on a merchant's advanced knowledge concerning the goods and services at issue, and thus failed to protect against numerous unfair and deceptive business practices aris-

ing from such reliance. *See Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812, 816 (1974). In 1968, in an effort to close this doctrinal gap and place the "seller and consumer" on "more equal terms," the General Assembly enacted the UTPCPL, declaring numerous egregious practices, as well as "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" to be unlawful. *Id.* at 815–17; 73 P.S. § 201–2(4) (detailing a litany of unlawful business practices). Under the UTPCPL, the Attorney General or a district attorney may bring public enforcement actions against "persons" employing, or about to employ, those practices:

§ 201–4. *Restraining prohibited acts*

Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any ... practice declared by ... this act ... to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such **person** to restrain by temporary or permanent injunction the use of such method, act or practice.

73 P.S. § 201–4 (emphasis added). In the course of such an action, he or she may obtain, under various circumstances, court costs, restitution, civil penalties, and even the dissolution of the offending "person" or forfeiture of its right to do business. *See* 73 P.S. §§ 201–4.1, 201–8, 201–9.[5] Additionally,

5. Those sections provide, in pertinent part:

§ 201–4.1. *Payment of costs and restitution*
Whenever any court issues a permanent injunction to restrain and prevent violations of this act ... the court may in its discretion direct that the defendant or defendants restore to any **person** in interest any moneys or property ... which may have been acquired by means of any violation[.]

§ 201–8. *Civil penalties*
(a) Any **person** who violates the terms of an injunction issued under [73 P.S. 201–4] ... shall forfeit and pay to the Commonwealth a civil penalty of not more than five thousand dollars ... for each violation.... The Attorney General, or the appropriate District Attorney,

the UTPCPL provides that "persons" who suffer ascertainable loss as a result of other "persons" employment of unfair trade practices may bring a private action to obtain relief:

### § 201–9.2 Private actions.

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any **person** of a method, act or practice declared unlawful by ... this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a) (emphasis added).

■ As noted *supra,* this case concerns the single issue of whether the UTPCPL's definition of "person"—"natural persons, corporations, trusts, partnerships, incorporated or unin-

acting in the name of the Commonwealth ... may petition for recovery of civil penalties and any other equitable relief[.]

\* \* \*

(b) In any action brought under [73 P.S. 201–4], if the court finds that a **person, firm or corporation** is willfully using or has willfully used a method ... declared unlawful by [73 P.S. 201–3], the Attorney General or the appropriate District Attorney ... may recover, on behalf of the Commonwealth ... a civil penalty of not exceeding one thousand dollars ... per violation, which civil penalty shall be in addition to other relief which may be granted.... Where the victim ... is sixty years of age or older, the civil penalty shall not exceed three thousand dollars ... per violation ... in addition to other relief which may be granted[.]

**73 P.S. § 201–9** *Forfeiture of franchise or right to do business; appointment of receiver*

Upon petition by the Attorney General, the court having jurisdiction, may, in its discretion, order the dissolution, suspension or forfeiture of the franchise or right to do business of any **person, firm or corporation** which violates the terms of an injunction issued under [73 P.S. § 201–4]. In addition, the court may appoint a receiver of the assets of the company.

73 P.S. §§ 201–4.1, 201–8, 201–9 (emphasis added).

corporated associations, and any other legal entities," 73 P.S. § 201–2(2)—includes political subdivision agencies. As the proper interpretation of a statute is a pure question of law, our standard of review is *de novo* and our scope of review is plenary. *Dechert LLP v. Commonwealth,* 606 Pa. 334, 998 A.2d 575, 579 (2010).

It is well settled that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Further, "[i]n giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Giant Eagle, Inc. v. W.C.A.B. (Givner),* 614 Pa.606, 39 A.3d 287, 290 (2012) (citation omitted). When considering statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903.

Thus, the threshold question before us is whether the language "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities" includes political subdivision agencies. CCBC contends that, under the plain language of the UTPCPL, political subdivision agencies are not included in the definition of "person" because they are not specifically enumerated in the definition. Consistent with Judge Leavitt's dissent below, CCBC argues that the legislature has, in many other contexts, explicitly named political subdivision agencies, and that its failure to do so here makes clear that it intended to exclude them from the UTPCPL's definition of "person." CCBC further asserts the Commonwealth Court erred in failing to apply the common law interpretive presumption that a statute using the term "person" does not ordinarily include political subdivision agencies. Alternatively, CCBC argues that, should this Court decline to hold that, under the plain language of the UTPCPL, a political subdivision agency is not a "person," the language of the UTPCPL should at least be deemed ambiguous as to this issue.

Appellees, conversely, submit that the UTPCPL's plain language clearly and unambiguously *includes* political subdivision agencies within its scope. In so arguing, Appellees note that the legislature has defined "person" under the UTPCPL as including "any other legal entity," and they contend that CCBC fails to explain why a community college is not a "legal entity" and, therefore, subject to UTPCPL liability. Appellees further allege that the rule of construction endorsed by CCBC—i.e., the presumption that the term "person" does not include a governmental entity—to the extent it is still applicable in Pennsylvania, does not apply because it applies only to state agencies, not political subdivisions.

Further, CCBC argues that, pursuant to the doctrine of *ejusdem generis,* because all the specifically enumerated entities in the definition of "person" are private entities, the language "any other legal entities" must be read to mean "any other [private] legal entities." Appellees, on the other hand, counter that each of the delineated entities is also capable of engaging in commerce and trade, and they suggest that, to the extent political subdivisions are also engaged in the sale of goods or services, political subdivisions should be considered "legal entities." Appellees further contend that their proposed construction would have the benefit of including numerous quasi-public institutions, such as national and state banks, credit unions, and mutual insurance companies, which, they suggest, is more consistent with the UTPCPL's purpose. Appellees also maintain that each enumerated entity is a "legal" entity, and suggest that we might accordingly read "any other legal entity" to include, quite simply, all legal entities.

In our view, both CCBC and Appellees advance reasonable views as to the common characteristics of "natural persons, corporations, trusts, partnerships, [and] incorporated or unincorporated associations," and, thus, the meaning of "any other legal entities." Thus, as both parties advance reasonable constructions of this phrase, we conclude that the UTPCPL's definition of "person" is ambiguous as to whether it includes political subdivision agencies. *See Delaware Cnty. v. First*

*Union Corp.*, 605 Pa. 547, 992 A.2d 112 (2010) (noting a statute is ambiguous when there are at least two reasonable interpretations of its provisions).[6]

Where the words of the statute at issue are not explicit, this Court may consider, *inter alia,* the following criteria: "[t]he circumstances under which it was enacted," "[t]he mischief to be remedied," "[t]he object to be attained," "[t]he former law, if any, including other statutes upon the same or similar subjects," and "[t]he consequences of a particular interpretation." 1 Pa.C.S.A. § 1921(c). In our view, although it is a close question, the aforementioned factors suggest that the legislature did not intend to define "person" as including political subdivisions and their agencies.

First, at the time of the UTPCPL's adoption, the common law provided both a doctrine of sovereign immunity, as well as a derivative interpretive presumption against depriving the state of sovereign rights or property, both of which arguably extended to political subdivision agencies. *See Bell Tel. Co. of Pa. v. Lewis,* 313 Pa. 374, 169 A. 571, 571 (1934); *Hoffman v. City of Pittsburgh,* 365 Pa. 386, 75 A.2d 649, 654 (1950). Given the extant ubiquity of these doctrines, we find it unlikely that the legislature would depart from them with such general language as "any other legal entities."

Furthermore, as noted *supra,* the legislature enacted the UTPCPL to account for the fundamental inequality between buyer and seller, and to protect consumers from exploitative merchants. The parties offer, and we discern, no evidence to suggest that, in enacting the UTPCPL, the General Assembly

6. We decline CCBC's invitation to apply the canon of *expressio unius est exclusio alterius,* or "the express mention of one thing excludes all others." *St. Elizabeth's Child Care Ctr. v. Dep't of Pub. Welfare,* 600 Pa. 131, 963 A.2d 1274, 1275 n. 1 (2009). First, we note that CCBC's argument does not actually invoke the canon it purports to invoke. Pursuant to *expressio unius,* a particular statute which specifies particular items within its scope implies the exclusion of other particular items. *See, e.g., Tate v. Ogg,* 170 Va. 95, 195 S.E. 496, 499 (1938) (opining that a statute concerning "any horse, mule, cattle, hog, sheep, or goat" did not include turkeys). It has no application where, as here, the legislature did not merely identify a list of covered subjects, but rather employed "catchall" language designed to include similarly situated entities within the statutory scope.

was concerned with and, thus, sought to eliminate unfair trade practices in the public sphere.

Finally, the consequences of adopting an interpretation of "person" to include political subdivision agencies strongly suggest to us that the General Assembly did not intend their inclusion. First, in the context of public enforcement actions, the UTPCPL provides that the Attorney General or a District Attorney may obtain, "on behalf of the Commonwealth," civil penalties in varying amounts, up to $5,000 per violation. 73 P.S. § 201–8. Likewise, in the context of private actions, plaintiffs may recover treble damages in an amount up to three times the amount of their actual damages, as well as costs and attorney fees. *See* 73 P.S. § 201–9.2. These damages, although designed, in part, for other more remedial purposes, do contain a deterrent, punitive element. *See Schwartz v. Rockey*, 593 Pa. 536, 932 A.2d 885, 898 (2007) (noting the treble damage provisions are "a hybrid," with both punitive and remedial aspects) (internal quotations and citations omitted). Although the legislature certainly has the authority to impose punitive sanctions and damages upon its political subdivisions, the proceeds of which would go to its own treasury, we are of the opinion that it would not take such an uncharted course without making a clearer statement, particularly given our longstanding precedent that governmental agencies are ordinarily immune from common-law punitive damages. *See Feingold v. SEPTA*, 512 Pa. 567, 517 A.2d 1270, 1276–77 (1986); *Hermits of St. Augustine v. Cty. Of Phila.*, 4 Clark 120, 7 Pa.L.J. 124 (Pa.1847).

Moreover, under certain circumstances, the Attorney General may seek the "dissolution, suspension or forfeiture of the franchise or right to do business" of a "person" who violates a court's injunction against an unfair or deceptive practice, as well as the appointment of a receiver to manage the party's affairs. *See* 73 P.S. § 201–9. In our view, it is incongruous that the General Assembly would adopt a provision effectively authorizing the Attorney General, with court approval, to eliminate political subdivisions.

In sum, we hold the UTPCPL is ambiguous as to whether political subdivision agencies constitute "persons." However, based on our consideration of the law prior to the UTPCPL's enactment, the UTPCPL's purpose, and the consequences of a holding that it applies to such agencies, we conclude the legislature did not intend for the definition of "person" to include political subdivision agencies. Accordingly, we reverse the Commonwealth Court's order affirming the trial court's denial of partial summary judgment with respect to this issue, and remand for further proceedings.

Order Reversed. Case Remanded. Jurisdiction Relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Chief Justice CASTILLE, concurring.

I agree with the Majority's conclusion that the term "person" as used in the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201–1–201–9.3, does not include political subdivision agencies such as appellant, Community College of Beaver County ("CCBC"), and thus I join the Majority Opinion and its mandate that the Commonwealth Court's order must be reversed, and the matter be remanded for further proceedings on the remaining contract and warranty claims.

I write separately regarding an additional reason to support the Majority's construction, although I recognize that the point is not squarely argued before us here. In order to be liable under the UTPCPL, a defendant must, in addition to being a "person" as defined in that statute, also be engaged in "the conduct of any trade or commerce." 73 P.S. § 201–3. As the Majority notes, "the legislature enacted the UTPCPL to account for the fundamental inequality between buyer and

seller, and to protect consumers from exploitative merchants." Majority Op. at 576, 93 A.3d at 814. In my view, CCBC is not a merchant, and is not engaged in trade or commerce as envisioned in the UTPCPL. I agree with Judge (now President Judge) Pellegrini's expression on this point in his dissent below:

"Trade or commerce" is mercantile activity in which the person engaged in that business is doing so for private profit which could motivate unfair or deceptive practices for private gain or, more accurately, private greed. All of the provisions of the [UTPCPL] are aimed at private businesses. The Community College is not engaged in the conduct of 'trade or commerce' but is carrying out a public responsibility with tax dollars to provide students with an affordable education to citizens of the Commonwealth. In other words, when a governmental entity is carrying out a public duty, it is not engaged in the conduct of a trade or commerce, but in the conduct of government.

*Meyer v. Community College of Beaver County,* 30 A.3d 587, 601–02 (Pa.Cmwlth.2011) (Pellegrini, J., dissenting). *See also id.* at 604 (Leavitt, J., dissenting) (CCBC is public institution and was not created to compete with private educational institutions, whether non-profit or for-profit; CCBC was created to fill need not filled by other institutions).

CCBC is engaged in providing education; the fact that it accepts tuition funds in exchange for providing that education does not establish that its mission is profit-making trade or commerce. As Judge Leavitt further observed in her dissent below, "[s]tate parks offer overnight campsites at state parks, and so do private campgrounds. This does not mean that the Commonwealth has undertaken 'trade or commerce' in the creation of its state park system." *Id.* at 603 n. 6 (Leavitt, J., dissenting). Accordingly, I find further support for the conclusion that CCBC is not subject to liability under the UTPCPL in the fact that it simply is not engaged in trade or commerce.