IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hidden Creek, L.P.                              :
                                                :
                    v.                          :
                                                :
Lower Salford Township Authority,               :
                    Appellant                   :        No. 1839 C.D. 2014

# **O R D E R**

NOW, November 6, 2015, upon consideration of appellant's petition for reargument *en banc* and appellee's response in opposition thereto, the petition is denied to the extent it seeks reargument, but reconsideration is granted. The opinion filed September 14, 2015 is withdrawn. The attached opinion is entered.

BY THE COURT:

_____
DAN PELLEGRINI,
President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hidden Creek, L.P.                          :
                                            :
                    v.                      :
                                            :
Lower Salford Township Authority,           :    No. 1839 C.D. 2014
                         Appellant          :    Argued: May 8, 2015


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                                  FILED: November 6, 2015


        The Lower Salford Township Authority (Authority) presents this interlocutory appeal from the Montgomery County Common Pleas Court's (trial court) September 15, 2014 order denying its summary judgment motion. The issues before the Court as directed by this Court's October 29, 2014 Order are as follows: "[w]hen does the applicable two[-]year statute of limitations begin to run for Hidden Creek, L.P.'s [(Developer)] claim of excessive tapping fees[; and,] [i]s the Authority entitled to governmental immunity from [Developer's] claim that tap[p]ing fees were charged in violation of the Municipal[ity] Authorities Act [(MAA).[1]]" *Id.* After review, we affirm.

        Developer was the owner and developer of 90 single-family residential lots in a community known as Hidden Creek in Lower Salford Township. On February 17, 1998, the Authority approved Resolution 98-3-17 (1998 Resolution) setting a $6,875.00 tapping fee, based upon a study performed by the Authority's engineer, Carroll Engineering Corporation (Engineer). On August 18, 1998, the

_____
[1] 53 Pa.C.S. §§ 5601-5623.

Authority and Developer entered into an "Agreement for the Construction of Sewer Lines" (Agreement). Pursuant to the Agreement, Developer would construct sewer lines as part of the Hidden Creek development. The Agreement also required Developer to purchase 90 equivalent dwelling units (EDU) of capacity in the Authority's wastewater collection and treatment system, and to pay $6,875.00 per EDU as a tapping fee, but further provided that "[t]apping fees shall be offset by the cost of certain off-site sewer improvements constructed by Developer." Reproduced Record (R.R.) at 170a. On December 21, 1999, the Authority approved Resolution 99-12-21 (1999 Resolution) which increased tapping fees to $7,000.00 per EDU, effective January 1, 2000. Developer made its first tapping fee payment on January 29, 1999 and its last payment on January 21, 2000.[2]

On September 25, 2000, Developer filed a writ of summons to initiate litigation to recover its alleged tapping fees' overpayment. Developer initially filed its complaint on July 31, 2002, but on November 17, 2006, filed a First Amended Complaint (Complaint) alleging that the Authority improperly calculated the tapping fees in violation of the MAA and overcharged Developer. Developer's Complaint sought damages representing excess tapping fees paid to the Authority, plus interest and costs.

On February 21, 2014, the Authority filed its summary judgment motion arguing, *inter alia*, that Developer's claim was barred by the statute of limitations and that the Authority was protected from liability by governmental immunity. By July 30, 2014 order, the trial court denied the Authority's summary judgment motion. On August 21, 2014, the Authority filed a Motion to Amend Order Entered July 30, 2014 to Permit Interlocutory Appeal Pursuant to 42 Pa.C.S. § 702(b) (Motion to Amend).

---

[2] The Authority's brief explains that of the 90 EDUs, Developer ultimately paid for 54 tapping fees totaling $372,125.00, and that Developer received a credit for 36 tapping fees totaling $252,000.00 reflecting the Authority's share of the cost of Developer's off-site improvements. Authority's Br. at 8.

2

By September 15, 2014 order, the trial court amended its July 30, 2014 order. On October 15, 2014, the Authority filed a Petition for Permission to Appeal with this Court (Petition). On October 27, 2014, Developer filed an answer to the Petition. On October 29, 2014, this Court granted the Petition.[3]

The Authority first contends that the trial court erred when it failed to find that Developer's claim was time-barred. Consistent with the case of *Harleysville Homestead, Inc. v. Lower Salford Township Authority*, 980 A.2d 749 (Pa. Cmwlth. 2009), the parties agree that a two-year statute of limitations applies in the instant matter, but disagree on when the statute began to run. The Authority argues that the limitations period began to run (at the latest) when the contract was executed and Developer was obviously aware of the amount of the tapping fee. In contrast, Developer asserts that because it is seeking an overpayments' refund, its cause of action did not accrue until it paid the allegedly erroneous fees, and that it filed its action within two years of its first payment.

In *Harleysville*, a developer sought damages representing overpayments to the Authority in violation of the MAA. The Authority moved to dismiss the action based, *inter alia*, on its assertion that the action was barred by the two-year statute of limitations set forth in Section 5524 of the Judicial Code.[4] The developer countered that a four-year limitations period applied because it had entered into an agreement

---

[3]

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. Summary judgment is proper only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law.

*Kincel v. Dep't of Transp.*, 867 A.2d 758, 761 n.7 (Pa. Cmwlth. 2005) (citation omitted).
[4] 42 Pa.C.S. § 5524.

with the Authority to pay the tapping fees. Relying on the Court's decision in *Petticord v. Joyce*, 578 A.2d 632 (Pa. Cmwlth. 1990), this Court agreed that a two-year statute of limitations applied to the developer's claim. The Court held that the developer's refund claim **sounded in tort** and that the developer's agreement to pay the tapping fees was merely "collateral to [the developer's] cause of action." *Harleysville*, 980 A.2d at 753.

The *Harleysville* Court did not address the pertinent issue before us – the date from which the statute runs - but did note that

> [t]he trial court also relied upon two similar cases in which it determined, based on *Petticord*, that the two[-]year statute of limitations applied wherein the plaintiffs[] contended that the . . . Authority violated a statutory duty to set reasonable prices for the purchase of sewer capacity. Both of these cases were affirmed by this Court in unpublished opinions. *See K. Hov[n]anian at Perkiomen I, Inc. v. Montgomery C[nty.] Sewer Auth[.]*, (No. 95-21147, filed January 25, 1999) *aff'd*, (Pa. Cmwlth., No. 3433 C.D. 1998, filed July 14, 1999); and *LHC Realty Corp[.] v. Montgomery C[nty.] Sewer Auth[.]*, (No. 96-03457, filed June 29, 1998) *aff'd*, (Pa. Cmwlth., No. 1514 C.D. 1998, filed May 7, 1999).

*Harleysville*, 980 A.2d at 751 n.5. Although unreported opinions are not binding precedent, the cited *LHC* decision addresses a situation substantially similar to the instant case, and thus, its reasoning provides insight and is persuasive authority. *See* Commonwealth Court's Internal Operating Procedures Section 414.

In *LHC*, a developer applied to the municipal authority to reserve 341 sewer connections for a proposed townhouse development. The municipal authority charged a tapping fee of $4,500.00 per unit, for a total fee of $1,534,500.00. The developer purchased the connections and executed a capacity rights agreement with the municipal authority. Thereafter, by the Act of December 19, 1990, P.L. 1227, No. 203 (Act 203), the General Assembly amended the then-applicable Municipal

4

Authorities Act of 1945 (1945 Act)[5] which regulated the rates that municipal authorities could charge. The amendment, effective June 1991, exempted from its applicability all pre-existing agreements. On June 4, 1991, the municipal authority adopted a resolution reducing its fee for sanitary sewer capacity, but exempted pre-existing agreements.

The developer defaulted on its financial obligations and, in July 1991, the municipal authority transferred the 341 sewer connections to the developer's successor-in-interest (Successor). In February 1994, the municipal authority increased the rate for sanitary sewer capacity, but exempted pre-existing agreements. Successor filed suit alleging that the capacity rights agreement was unlawful under the 1945 Act and the municipal authority's refusal to refund overpayments violated the 1945 Act. The municipal authority moved for summary judgment, arguing, *inter alia*, that the action was barred by a two-year statute of limitations. The trial court granted summary judgment, finding that the 1945 Act, and the municipal authority's rate resolutions specifically exempted pre-existing agreements. Importantly, the trial court also found the action was barred by the two-year statute of limitations. The trial court stated:

> [I]n the instant case, Plaintiff claims that it was caused to incur unnecessary expense because [the municipal authority] breached it [sic] statutory duty to set reasonable prices for EDU sewer capacity, and thus, as in *Petticord*, this case should be governed by a two-year statute of limitations period. **Statutes of limitation begin to run as soon as the right to institute and maintain suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the limitation period**. . . . Since the Plaintiff alleges that the unreasonable charge for EDU's [sic] was incurred . . . when the Capacity Rights Agreement

---

[5] Section 3 of the Act of June 19, 2001, P.L. 287, repealed the MAA of 1945, Act of May 2, 1945, P.L. 382, *as amended*, *formerly* 53 P.S. §§ 301-322.

was executed, any claim arising therefrom should have been brought within two years[.]

*LHC*, slip op. at 6 (quoting Common Pleas Court Opinion, June 29, 1998 at 5-6) (emphasis added). This Court agreed, stating: "[The developer] chose to reserve the EDU's [sic] by executing the capacity rights agreement and paying $4,500[.00] per EDU in 1989, **and the statute of limitations began to run at that time.**" *LHC*, slip op. at 7 (emphasis added).

In the instant action, Developer's Complaint alleges, "the Authority **required** [Developer] to enter into [the Agreement]" which mandated that Developer pay the allegedly improper fee. R.R. at 132a (emphasis added). The Agreement included Developer's obligation to:

> pay to the Authority a connection and/or tapping fee in the amount of Six Thousand Eight Hundred Seventy-Five Dollars ($6,875.00) for each of the forty-four (44) units to be constructed, or a total sum of Three Hundred Two Thousand Five Hundred Dollars ($302,500.00). Tapping fees shall be offset by the cost of certain off-site sewer improvements constructed by Developer. The remaining tapping fees due shall be divided by the forty-four (44) units and paid as a building permit for each unit at the time the building permit is issued.

R.R. at 170a. Upon execution of the Agreement, Developer became legally obligated to pay the Authority tapping fees in the allegedly erroneous amount dictated in the Agreement. Although the Agreement provides that tapping fees were to be offset by the cost of other improvements, it is the alleged miscalculation of the tapping fees (and not the offsets) that is the subject of this litigation.

A "statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). Developer was harmed upon the execution of the Agreement, the moment it was legally obligated to pay an allegedly unlawful fee.

6

Developer argues that even if this Court determines that the statute of limitations would normally start running before the date of payment, the trial court properly denied the Authority's summary judgment motion based upon the "discovery rule."

> The 'discovery rule,' so-called, is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.
>
> . . . .
>
> [T]he rule is an equitable one, which excludes the period of time during which the injured party is *reasonably unaware* that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury. Although the purpose of this rule is to mitigate, in worthy cases, the harshness of an absolute and rigid period of limitations, it is also true that the rule cannot be applied so loosely as to nullify the purpose for which a statute of limitations exists.
>
> The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence. The standard of reasonable diligence is objective, not subjective. It is not a standard of reasonable diligence unique to a particular plaintiff, but instead, a standard of reasonable diligence as applied to a reasonable person.

*Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997) (citations and quotation marks omitted).

Developer contends "that it was not aware until after it had made the payments, and . . . did not have any reason to know at the time it made such

7

payments, that [the Authority] had improperly calculated the base amount of the tapping fee[.]" Developer Br. at 8.

Importantly, Section 5607(d)(24)(i)(C) of the MAA, entitled "Tapping fee[,]" provides:

> A tapping fee shall not exceed an amount **based upon some or all of the following parts** [capacity part; distribution or collection part; special purpose part; reimbursement part] **which shall be separately set forth in the resolution adopted by the authority to establish these fees**. In lieu of payment of this fee, an authority may require the construction and dedication of only such capacity, distribution-collection or special purpose facilities necessary to supply service to the property owner or owners.

53 Pa.C.S. § 5607(d)(24)(i)(C) (emphasis added). Further, Section 5607(d)(24)(ii) of the MAA states in relevant part:

> Every authority charging a tapping, customer facilities or connection fee shall do so only pursuant to a resolution adopted at a public meeting of the authority. **The authority shall have** available for public inspection **a detailed itemization of all calculations, clearly showing the maximum fees allowable for each part of the tapping fee and the manner in which the fees were determined,** *which shall be made a part of any resolution imposing such fees*.

53 Pa.C.S. § 5607(d)(24)(ii) (bold and italic emphasis added). Finally, Section 5607(d)(24)(iii) provides: "No authority shall have the power to impose a connection fee, customer facilities fee, tapping fee or similar fee except as provided specifically under this section." 53 Pa.C.S. § 5607(d)(24)(iii).

The Authority's resolutions establishing the applicable tapping fees state, in relevant part:

RESOLUTION ESTABLISHING TAPPING FEE PURSUANT TO ACT 203

WHEREAS, [Engineer] has performed a study to determine the appropriate amount that the [Authority] may charge as a tapping fee; and

WHEREAS, the results of the Engineer's study indicated that the Authority could charge a tapping fee in excess of Seven Thousand Dollars ($7,000.00); and

WHEREAS, the Authority is desirous of increasing its tapping fee but does not desire to charge the maximum fee permissible; and

WHEREAS, the Authority, upon the proper motion and second, adopted an increase in tapping fees at its December 11, 1997 meeting.

NOW, THEREFORE, be it resolved and it is hereby resolved as follows:

1. Authority hereby adopts Engineer's Act 203 study dated November, 1997 as a basis for calculating its tapping fees.

2. Authority hereby establishes its tapping fee at Six Thousand Eight Hundred and Seventy-five Dollars ($6,875,00), effective December 11, 1997.

3. All other resolutions inconsistent herewith are deemed rescinded.

1998 Resolution, R.R. at 152a-153a.

RESOLUTION ESTABLISHING TAPPING FEE PURSUANT TO ACT 203

WHEREAS, [Engineer] has performed a study to determine the appropriate amount that the [Authority] may charge as a tapping fee; and

WHEREAS, the results of the Engineer's study indicated that the Authority could charge a tapping fee in excess of Seven Thousand Dollars ($7,000.00); and

9

WHEREAS, the Authority is desirous of increasing its tapping fee but does not desire to charge the maximum fee permissible; and

WHEREAS, the Authority, upon the proper motion and second, adopted an increase in tapping fees at its December 21, 1999 meeting.

NOW, THEREFORE, be it resolved and it is hereby resolves as follows:

1. Authority hereby adopts Engineer's Act 203 study dated December, 1999 as a basis for calculating its tapping fees.

2. Authority hereby establishes its tapping fee at Seven Thousand Dollars ($7,000.00), effective January 1, 2000.

3. All other resolutions inconsistent herewith are deemed rescinded.

1999 Resolution, R.R. at 196a-197a.

Although both Resolutions adopted the Engineer's studies, the components providing the basis for the tapping fees were not separately set forth in the Resolutions **as the MAA required**. Nor do the Resolutions indicate that the Engineer's studies are attached thereto. Thus, the Resolutions do not provide any basis to evaluate the accuracy of the tapping fees. The absence of these required components in the Resolutions further supports Developer's contention that it did not have reason to know of the alleged calculation errors in the tapping fee at the time it agreed to pay the fee or thereafter.[6]

---

[6] Because the issue is not before us, we do not consider the impact of the apparent defects in the Resolutions on the Authority's ability to impose the tapping fees based thereon. *See Norristown Mun. Waste Auth. v. 200 E. Airy, LLC* (Pa. Cmwlth. No. 1977 C.D. 2010, filed November 30, 2011). In *Norristown*, an unreported opinion, this Court held that a trial court properly struck off a lien imposed by a municipal authority for failure to pay a tapping fee. Although the trial court struck the lien because the resolution imposing the fee was adopted after the municipality sought payment from the landowner, this Court also noted that the result would be the same had the municipal authority relied upon an earlier resolution because:

Our Supreme Court has held:

**The point at which the complaining party should be reasonably aware that he or she has suffered an injury and its cause is ordinarily an issue of fact to be determined by the jury** due to the fact[-]intensive nature of the inquiry. Only where the facts are so clear that reasonable minds could not differ may a court determine as a matter of law at the summary judgment stage, the point at which a party should have been reasonably aware of his or her injury and its cause and thereby fix the commencement date of the limitations period.

*Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011) (citations omitted; emphasis added).

Here, legitimate factual questions remain as to whether Developer was reasonably unaware that the tapping fee was allegedly erroneous, and the Authority's apparent failure to comply with the MAA in adopting its tapping Resolutions may have deprived Developer of information necessary to evaluate the accuracy of the tapping fee. Because "the facts are [not] so clear that reasonable minds could not differ" as to when Developer should have been reasonably aware of the alleged error

---

The . . . [r]esolution purports to set tapping fees 'as such term is defined in the Sewer System Tapping Fee Report, and prepared by Keystone Alliance Consulting and dated February 2008.' R.R. 64a. The . . . [r]esolution further provides that '[t]he tapping fee amount is based on the calculations, prepared by Keystone Alliance Consulting and presented in the aforementioned Report, and is allocated between the collection and capacity components.' *Id*. However, the [r]esolution does not attach the report or have a separate resolution setting forth the fees as required by the [sic] 53 Pa.C.S. §5607(d)(24)(i). *Id*.

*Norristown*, slip op. at 9 n.9.

11

in tapping fees, we conclude that the trial court properly denied the Authority's summary judgment motion on the timeliness issue. *Id.* at 485.[7]

The Authority next asserts that Developer's action is barred by the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541-8542. Section 8541 of the Tort Claims Act provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Section 8542 of the Tort Claims Act, 42 Pa.C.S. § 8542, provides exceptions to the aforementioned immunity, none of which are applicable to the instant matter.

In *Meyer v. Community College of Beaver County*, 2 A.3d 499 (Pa. 2010) (*Meyer I*), our Supreme Court considered whether a community college was

---

[7] The Authority contends in its reply brief that Developer waived the discovery rule since it did not raise the issue in its reply to the Authority's summary judgment motion. We disagree. The Pennsylvania Superior Court has held:

> A plaintiff who wishes to assert the discovery rule may do so in one of two ways: 1) **by pleading in the complaint sufficient facts to sustain application of the rule**; or 2) by waiting until the defendant asserts a statute of limitations defense in new matter and then raising the discovery rule in a responsive pleading.

*Prevish v. Nw. Med. Ctr.*, 692 A.2d 192, 197 (Pa. Super. 1997) (emphasis added), *aff'd*, 717 A.2d 1023 (Pa. 1998); *see also Fox v. Byrne*, 525 A.2d 428, 431 (Pa. Super 1987) (noting that in an earlier case of *Stein v. Richardson*, 448 A.2d 558 (Pa. Super. 1982), "[t]he court was willing to search the pleadings to determine whether the [plaintiffs] had at any time asserted that they were unable to discover the injury or could not have been able to discover the injury until such time as would prevent the statute from acting as a bar.").

Developer's Complaint states in relevant part: "The Tapping Fees of between Six Thousand Eight Hundred Seventy-Five Dollars ($6,875.00) and Seven Thousand Dollars ($7,000.00) per EDU were established by the Authority, but despite repeated requests, the Authority has yet to furnish [Developer] with the basis for its calculation." Complaint at ¶ 7. The Authority's refusal to provide the information, along with its failure to comply with the MAA by attaching the basis for the fee to its Resolutions possibly prevented Developer from learning that the fee was incorrectly calculated. Accordingly, Developer pled sufficient facts alleged to conclude that Developer did not waive the discovery rule.

immune from liability to its former students when it lost its certification. The Court vacated the decision of the Commonwealth Court which had reversed the trial court's denial of the college's partial summary judgment motion, and held that "governmental immunity does not extend to all statutory causes of action, regardless of whether they sound in tort or contract." *Id*. at 503.[8]

Thereafter, in *Dorsey v. Redman*, 96 A.3d 332 (Pa. 2014), the Supreme Court considered whether a register of wills was immune under the Tort Claims Act from statutory liability permitted by Section 3172 of the Probate, Estates and Fiduciaries Code (PEF Code).[9] The Court first noted:

> As questions of governmental immunity are legislative in nature, we begin by considering the dictates found in the Statutory Construction Act ('SCA'). 1 Pa.C.S.[] §§ 1501 *et seq*. The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.[] § 1921(a). The best indication of the legislature's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, we may not go beyond the plain meaning of the language of the statute 'under the pretext of pursuing its spirit.' *Id*. § 1921(b). Therefore, only when the words of a statute are ambiguous, should a reviewing court seek to ascertain the intent of the General Assembly through

---

[8] On remand, this Court, in an en banc decision, concluded that the college, a political subdivision agency, was a person subject to suit under the Unfair Trade Practices and Consumer Protection Law (CPL), Act of December 16, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201.1—201-9.3. The Court further found that the students' claims sounded in contract and thus the Tort Claims Act did not bar the action. On appeal, the Supreme Court reversed, finding that the General Assembly did not intend that the definition of 'person' include political subdivision agencies. *Meyer v. Cmty. College of Beaver County*, 93 A.3d 806 (Pa. 2014).

[9] 20 Pa.C.S. §§ 3171-3172. Section 3172 of the PEF Code states:

> If any register shall grant letters without having taken such bond as is required by law, he and his surety shall be liable to pay all damages which shall accrue to any person by reason thereof. Nothing herein stated shall be deemed to relieve the personal representative from liability which would otherwise be imposed upon him by law.

20 Pa.C.S. § 3172.

13

considerations of the various factors found in Section 1921(c) [of the SCA]. *Id.* § 1921(c); *see generally Bayada Nurses Inc. v. . . . Dep[']t [of] Labor [&] Indus.*, . . . 8 A.3d 866, 880-81 ([Pa.] 2010). Additionally, we are mindful that, in interpreting the Tort Claims Act, exceptions to the absolute rule of immunity expressed in the statute 'must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability.' *Mascaro v. Youth Study Ctr.*, . . . 523 A.2d 1118, 1123 ([Pa.] 1987).

*Dorsey*, 96 A.3d at 340-41. The *Dorsey* Court further explained that in *Meyer I*, it had

> eschewed a rote approach to determining immunity. While, generally, the appropriate analysis to determine whether the protections of the Tort Claims Act may cloak an employee of a local government entity with immunity first looks to whether the cause of action sounds in tort, or some other cause of action, such as in contract, we do not find this tort/contract construct to be necessarily appropriate in all questions of immunity.

*Dorsey*, 96 A.3d at 341.

Ultimately, the *Dorsey* Court held that governmental immunity did not apply, finding that Section 3172 of the PEF Code "creates a targeted form of accountability resting outside of the scope of governmental . . . immunity." *Dorsey,* 96 A.3d at 341. Applying the canons of statutory construction, the Court found "that the General Assembly . . . intended to maintain a protective scheme for preservation of estate assets through the PEF Code, and that this scheme persists outside of the scope of governmental . . . immunity under the Tort Claims Act." *Id*. at 342.

Relying on *Dorsey* and *Meyer I*, and citing to various sections of the MAA, Developer contends that its claim is not barred because the MAA expressly permits it. Specifically, Developer points to Section 5607(d)(2) of the MAA which allows municipal authorities to "sue and be sued." 53 Pa.C.S. § 5607(d)(2). Developer also references Section 5607(d)(9) of the MAA which authorizes "[a]ny

14

person questioning the reasonableness or uniformity of a rate fixed by an authority or the adequacy, safety and reasonableness of the authority's services, including extensions thereof, [to] bring suit against the authority in the court of common pleas of the county where the project is located . . . ." 53 Pa.C.S. § 5607(d)(9). Developer further relies upon Section 5607(d)(24)(iii) of the MAA which prohibits an authority from imposing a tapping fee in contravention of the MAA. Developer maintains that it is not seeking an award of consequential damages or general damages, but rather the return of its own funds that the Authority allegedly improperly charged and collected, plus interest for the time it was deprived of those funds.

Developer contends that the adoption of the Authority's position would frustrate Section 5607 of the MAA's purpose. Developer reasons:

> To uphold [the Authority's] position would mean that a municipal authority can adopt a fee that is in violation of the statute and can then use its power to withhold needed permits, thereby placing a developer in a squeeze where the developer has to choose between: [a] economic loss by refusing to pay the excessive fees and not getting the needed permit and, instead, spending years in litigation with the municipal authority trying to get the permits without paying the excessive fee, or [b] paying the fee and never be able to secure a refund of its own funds that the legislature decided could not be charged. It defies logic (and any sense of justice) to hold that the legislature when it adopted the limitation on tapping fees in the [MAA] and when it allowed a municipal authority to be sued, including sued as to its fees, made such prohibition to be so toothless and ineffective that a party faced with a demand for an improper fee was limited to the Hobson's choice set forth above between suffering damages of one type or the other. It similarly would be improper and illogical to hold that the legislature when it allowed municipal authorities to be sued and for lawsuits to be filed over an authority's fees did not intend that the permitted lawsuits and challenges to fees would include suits for a return of fees that the legislature had declared that the authority could not charge but that

15

immunity would apply to bar the return of improperly charged fees.

Developer's Br. at 30-31. We agree.

The General Assembly, through its careful crafting of the MAA's extraordinarily detailed provisions for determining the component parts, limited the amounts that municipal authorities could charge for tapping fees. *See* 53 Pa.C.S. § 5607(d)(24)(i)(C). The General Assembly also specifically permitted municipal authorities to be sued, and for the reasonableness of their rates to be challenged. Rates charged in excess of those permitted by statute are not reasonable rates.

Although Developer's action is indeed a challenge to the Authority's fees, it is also an action to recover damages. However, those damages are simply the funds the Authority collected, if any, exceeding the lawfully permitted rate. There is no claim for consequential damages. Developer's cause of action, if successful, merely makes the Authority adhere to the MAA by returning monies it obtained in violation thereof, along with accrued interest. It is illogical to presume that where the General Assembly set forth stringent restrictions on tapping fees, providing extensive guidance for the determination of those fees and permitting legal challenges thereto, it intended that a municipal authority which violates the restrictions and collects excessive fees, should be immune from an action to recover those unlawfully assessed fees. "We cannot presume that the legislature intended such an absurd result. 1 Pa.C.S. § 1922(1)." *Todd v. Workmen's Comp. Appeal Bd. (NCR Corp.)*, 692 A.2d 1086, 1087 (Pa. 1997). Accordingly, in the instant circumstances, we conclude that Section 5607(d) of the MAA "creates a targeted form of accountability resting outside of the scope of governmental . . . immunity." *Dorsey*, 96 A.3d at 341.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hidden Creek, L.P. | : | |
| | : | |
| v. | : | |
| | : | |
| Lower Salford Township Authority, | : | No. 1839 C.D. 2014 |
| Appellant | : | |

O R D E R

AND NOW, this 14th day of September, 2015, the Montgomery County Common Pleas Court's September 15, 2014 order is affirmed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hidden Creek, L.P.                          :
                                            :
                v.                          : No. 1839 C.D. 2014
                                            : Argued:  May 8, 2015
Lower Salford Township Authority,           :
                Appellant                   :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


CONCURRING OPINION BY
PRESIDENT JUDGE PELLEGRINI                    FILED: November 6, 2015


            I concur with the result reached by the majority because of the issues
that have been raised and the interlocutory nature of the appeal.  I write separately
because I do not believe that the challenge regarding whether the tap-in fees are
excessive is maintainable under the facts of this case.


            In February 1998, the Lower Salford Township Authority (Authority)
approved a resolution setting a $6,875.00 tapping fee.  After the enactment of the
resolution, in August 1998, the Authority and Hidden Creek, L.P. (Developer)
entered into an "Agreement for the Construction of Sewer Lines" (Agreement) under
which the Developer would construct sewer lines and pay the Authority for the costs
incurred by inspecting and administering the project.  The Agreement also provided
that the Developer was to pay $6,875.00 per each equivalent dwelling unit (EDU) as

a tapping fee,[1] but that those tapping fees would be offset by the cost of certain off-site sewer improvements made by the Developer.[2] The Developer made its first tapping fee payment on January 29, 1999, and its last payment on January 21, 2000.

On September 25, 2000, the Developer filed a writ of summons to initiate litigation to recover its alleged overpayment of tapping fees that ultimately led to the First Amended Complaint (Complaint) filed in November 2006, which alleged that the Authority overcharged the Developer by improperly calculating the tapping fees in violation of the Municipal Authorities Act (MAA)[3] and sought damages representing the excess tapping fees paid to the Authority, plus interest and costs. The Authority claimed that the claim, among other things, was time barred.

The parties agree that a two-year statute of limitations applies, but disagree on when the statute of limitations began to run. The Authority argues that the limitations period began to run (at the latest) when the contract was executed and that the Developer was obviously aware of the amount of the tapping fee. The Developer asserts that because it is seeking a refund of overpayments, its cause of action did not accrue until it paid the allegedly erroneous fees, and that it filed its action within two years of its first payment.

---

[1] The Developer ultimately paid for 54 tapping fees totaling $372,125.00, and received a credit for 36 tapping fees totaling $252,000.00, reflecting the Authority's share of the cost of the Developer's off-site improvements.

[2] Later, on December 21, 1999, the Authority approved Resolution 99-12-21 (1999 Resolution) which increased the tapping fees to $7,000.00 per EDU, effective January 1, 2000.

[3] 53 Pa. C.S. §§5601-5623.

While the majority finds that the Developer was harmed upon the execution of the Agreement, the moment that it was legally obligated to pay an allegedly unlawful fee, it remands to determine whether the Developer was aware under the discovery rule that the tapping fee was excessive due to the Authority's apparent failure to comply with the MAA in adopting its tapping resolution which may have deprived the Developer of information necessary to evaluate the accuracy of the tapping fee.

In this case, the Agreement provided that the Developer would perform some off-site sewer work and would pay the Authority for its costs and expenses in inspecting the Developer's work, as well as other administrative costs that it incurred. If there is a dispute regarding those administrative costs, the property owner is required to challenge them within 60 days of billing of those costs and the matter is then submitted to arbitration on a strict schedule. Section 5607(30) of the MAA, 53 Pa. C.S. §5607(30).

Under this Agreement, there was also an additional provision that the Developer was to pay the Authority an agreed-upon price of $6,875.00 per EDU, and that there was no reservation of the right to challenge the tapping fee in the Agreement. Notwithstanding that it agreed to pay a certain amount, the Developer is attempting to challenge the underlying calculation of the tapping fees as if they were not fixed by the Agreement. The question then is can property owners challenge the amount of the tapping fee and when can they challenge it.

Without definitively deciding the issue, there seems to me to be only two possible ways to challenge the fee. When a property owner desires to connect to a

sewer system, there is no written agreement between the property owner and the local authority or municipality. Normally, as a prerequisite to obtaining a building permit from the local municipality, the property owner has to show proof that it can dispose of solid waste whether by an approved septic system or a tap-in to an approved sewage system. When the owner obtains the permission to tap-in, he or she pays the required fee. If, at that time, the property owner believes that the amount is excessive, he or she can pay the fee under protest and bring a challenge, like all administrative determinations, under the Local Agency Law[4] that the fee is not properly calculated, with subsequent appeals to the common pleas court. In some circumstances, though, before the permit process has even begun, a property owner may be able to challenge the fee through an action under the Declaratory Judgments Act.[5]

While I believe that a property owner can normally challenge the fee as outlined above, I disagree that, in this case, the Developer can challenge the amount here because it agreed to pay $6,875.00 per EDU under the Agreement and can pay no more or no less. However, because this issue is not before us, I concur with the majority's result.

_____
DAN PELLEGRINI, President Judge

---

[4] 2 Pa. C.S. §§551-555, 751-754.

[5] 42 Pa. C.S. §§7531-7541.