**[J-61A-2024 and J-61B-2024]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| DANIEL GARCIA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : | No. 27 WAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered March 14, |
| Appellant | : | 2023, at No. 1320 WDA 2021, |
| | : | Reversing the Order of the Court |
| | : | of Common Pleas of Allegheny |
| v. | : | County entered July 14, 2021, |
| | : | at No. GD-20-11057. |
| | : | |
| AMERICAN EAGLE OUTFITTERS, INC., | : | ARGUED: October 8, 2024 |
| CARTER'S INC., CHICO'S FAS, INC., | : | |
| GABRIEL BROTHERS, INC., GENESCO | : | |
| INC., HOT TOPIC, INC., J. CREW GROUP, | : | |
| INC., KOHL'S CORPORATION, | : | |
| TAPESTRY, INC., THE GAP, INC., VERA | : | |
| BRADLEY, INC., | : | |
| | : | |
| Appellees | : | |
| | | |
| DANIEL GARCIA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : | No. 28 WAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered March 14, |
| Appellant | : | 2023, at No. 1453 WDA 2021, |
| | : | Reversing the Order of the Court |
| | : | of Common Pleas of Allegheny |
| v. | : | County entered September 2, 2021, |
| | : | at No. GD 21-002107. |
| | : | |
| FOOT LOCKER RETAIL, INC., FOOT | : | ARGUED: October 8, 2024 |
| LOCKER SPECIALTY, INC., AND FOOT | : | |
| LOCKER STORES, INC., | : | |
| | : | |
| Appellees | : | |

**OPINION**

The Unfair Trade Practices and Consumer Protection Law (UTPCPL)[1] prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Section 3(a) of the UTPCPL, 73 P.S. § 201-3(a).  In this discretionary appeal, we must decide whether a merchant's collection of sales tax occurs in the conduct of any trade or commerce as contemplated by the UTPCPL.  For the reasons that follow, we hold that it does not.  Because the Superior Court reached this same conclusion, we affirm the Superior Court's order.

## I. BACKGROUND

In late 2020, Daniel Garcia (Garcia) purchased cloth facemasks from several retail stores.[2]  The Retailers collected sales tax for each mask.  Believing the masks to be nontaxable,[3] Garcia promptly filed a class action complaint in the Court of Common Pleas of Allegheny County (trial court) against Retailers under the UTPCPL.  Garcia alleged that Retailers collected sales tax on items—*i.e.*, masks—that Retailers knew or should have known were nontaxable.  Retailers filed preliminary objections in the nature of a demurrer, arguing, *inter alia*, that the complaint was legally insufficient and failed to state a claim, because the miscollection of sales tax alleged in Garcia's complaint did not occur

---

[1] Act of December 17, 1968, P.L. 1224, reenacted by the Act of November 24, 1976, P.L. 1166, *as amended*, 73 P.S. §§ 201-1 to -10.

[2] The retailers involved in this appeal are American Eagle Outfitters, Inc., Carter's, Inc., Chico's FAS, Inc., Foot Locker, Inc., Gabriel Brothers, Inc., Genesco, Inc., Hot Topic, Inc., J. Crew Group, Inc., Kohl's Corporation, Tapestry, Inc., The Gap, Inc., and Vera Bradley, Inc. (collectively, Retailers).

[3] *See* Section 204(17) of the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7204(17) (providing that "medical supplies" are not subject to sales tax).

in the conduct of any trade or commerce as contemplated by the UTPCPL.[4]  The trial court held argument and subsequently issued an order overruling the preliminary objections.

The Superior Court granted Retailers permission to appeal from the interlocutory order and reversed the trial court's order in a unanimous opinion.  The Superior Court first identified "[t]he sole issue before [it as] whether the collection of sales tax on nontaxable items, as alleged in Garcia's complaint, is cognizable under the UTPCPL."  *Garcia v. Am. Eagle Outfitters, Inc.*, 293 A.3d 252, 254 (Pa. Super. 2023).  The Superior Court acknowledged that the UTPCPL defines "'[t]rade' and 'commerce'" as "the advertising, offering for sale, sale or distribution of any services and any property."  *Id.* at 255 (quoting Section 2(3) of the UTPCPL, 73 P.S. § 201-2(3)).  The Superior Court clarified, however, that "[t]here is no dispute that the sale of cloth facemasks qualifies as trade or commerce."  *Id.* at 256.  Instead, "[t]he parties dispute[d] whether the collection of sales tax in this case happened 'in the conduct of' selling cloth facemasks."  *Id.*  The Superior Court recognized that this Court had not yet interpreted the phrase, and, accordingly, the Superior Court conducted a statutory interpretation analysis.

The Superior Court first looked to the dictionary definition of "conduct," which is "the act, manner, or process of carrying on."  *Id.* at 256 (quoting *Conduct*, Merriam-Webster's Online Dictionary, https://merriam-webster.com/dictionary/conduct (last visited Jan. 24, 2024)).  The Superior Court determined that this definition did "not support the trial court's ruling."  *Id.*  In so doing, the Superior Court rejected Garcia's

---

[4] Retailers also raised preliminary objections in the nature of demurrer, arguing that Garcia failed to allege (1) any false or deceptive representation by Retailers, (2) Garcia's justifiable reliance upon any misrepresentation by Retailers, and (3) that Garcia made the purchase for personal, family, or household purposes.  *See* Section 9.2 of the UTPCPL, 73 P.S. § 201-9.2 (providing for private actions under UTPCPL); *see also Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645-46 (Pa. 2021) (outlining required elements of private action under UTPCPL).

argument that the dictionary definition "is broad enough to encompass actions that are 'related to' the conduct of commerce."[5] *Id.* at 260-61. To the contrary, the Superior Court observed that "the phrase 'related to' appears elsewhere in the UTPCPL" but does not appear in Sections 2 and 3 of the UTPCPL. *Id.* at 261 (citing *Fonner v. Shandon, Inc.*, 724 A.2d 903, 907 (Pa. 1999) ("[W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded.")). Accordingly, the Superior Court "discern[ed] no basis for concluding that activity merely 'related to' trade or commerce is actionable under the UTPCPL." *Id.*

Turning to the purpose of the UTPCPL, the Superior Court reiterated that the General Assembly intended "to even the bargaining power between consumers and sellers in commercial transactions[] and[,] to promote that objective, it aims to protect the consumers of the Commonwealth against fraud and unfair or deceptive business practices." *Id.* at 256 (quoting *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018)). The Superior Court also noted that, because the UTPCPL is a remedial statute, "it is to be construed liberally to effectuate that goal." *Id.* (quoting *Golden Gate*, 194 A.3d at 1023). In addressing the collection of sales tax, however, the Superior Court emphasized that merchants must collect and remit sales tax, which the merchants holds in trust for the Commonwealth. *Id.* at 256-57 (citing Sections 237(b)(1) and 225 of the Tax Reform Code, 72 P.S. §§ 7237(b)(1), 7225).[6]

---

[5] The Superior Court likewise rejected Garcia's discussion of warranties "as an example of something that is 'related to,' but not itself, trade or commerce." *Garcia*, 293 A.3d at 261. The Superior Court explained that it had "no occasion to opine on the actionability of warranties here," but noted that "warranties can be advertised and used to influence a consumer's purchasing decision" in a way that is "entirely distinct from sales tax." *Id.*

[6] The Superior Court further stated that, in the event of improper tax collection, the Department of Revenue (Department) will provide a refund of taxes collected to which the Commonwealth is not entitled. *Garcia*, 293 A.3d at 257 (citing Section 252 of the Tax Reform Code, 72 P.S. § 7252 ("The [D]epartment shall . . . refund all taxes . . . paid to the Commonwealth . . . to which the Commonwealth is not rightfully entitled.")).

Accordingly, a merchant has no discretion in determining taxability, nor does it have any "profit motive" to collect sales tax on a nontaxable item. *Id.* at 257. The Superior Court, therefore, concluded that "it is not obvious" that an action alleging miscollection of sales tax "advances the purposes of the UTPCPL." *Id.* Indeed, the Superior Court observed that an overcollection of sales tax would "put the[ merchant] at a competitive disadvantage." *Id.* at 257.

Moreover, the Superior Court explained that, while the UTPCPL includes "advertising" in its definition of trade and commerce, "the Pennsylvania Code forbids retailers to include sales tax in the advertised price of a product" and "mandates that the applicable sales tax, if advertised at all, be advertised separately and identified as a tax." *Id.* at 257 (citing 61 Pa. Code § 31.2(4) ("When referred to in advertising or other price quotations, the tax shall be separately stated. For example, an article selling for 99¢ may not be advertised at '$1.05' or '$1.05 including tax' but shall be advertised at '99¢ plus tax,' '99¢ plus 6¢ tax' or '99¢.'")); *see also id.* (citing 61 Pa. Code § 31.2(3) ("[V]endor[s] may neither advertise nor otherwise state that the tax or any part thereof will be absorbed by the vendor or not be charged.")). The Superior Court concluded that "[t]his mandatory distinction" by the Department "supports a conclusion that the collection of sales tax is distinct from the conduct of trade or commerce as defined in the UTPCPL." *Id.*

The Superior Court next considered the decisions of other state courts interpreting similar statutory provisions, each of which "have concluded that collection of sales tax is not trade or commerce within the meaning of their consumer protection statutes." *Id.* at 257-58 (citing *Feeney v. Dell Inc.*, 908 N.E.2d 753, 770 (Mass. 2009) (holding that consumer protection law does not apply where merchant's "actions are motivated by 'legislative mandate, not business or personal reasons'") (quoting *Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 694 N.E.2d 820, 836 (Mass. 1998)); *Blass v.*

*Rite Aid of Connecticut, Inc.*, 16 A.3d 855, 862-63 (Conn. Super. Ct. 2009) (holding that consumer protection law does not encompass tax miscollection claims because state legislature "outlined a comprehensive remedial process for tax miscollection," "retailer gains no personal benefit from the overcollection," and consumer protection law "expressly excludes . . . actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the [s]tate") (internal quotations omitted)).    Within its consideration of these decisions, the Superior Court applied Section 1927 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991.[7]    *See* 1 Pa. C.S. § 1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.").

The Superior Court also reviewed decisions from federal district courts within this Commonwealth, which "have concluded that collection of sales tax is not part of the conduct of trade or commerce as defined in the UTPCPL."   *Id.* at 258 (citing *Lisowski v. Walmart Stores, Inc.*, 552 F.Supp.3d 519, 522 (W.D. Pa. 2021) (holding that UTPCPL "does not extend to regulate activity disconnected from the retailer's commercial interests, such as tax collection," where "the retailer steps into the shoes of the Commonwealth and acts as a state agent, motivated by public duty rather than private gain"); *McLean v. Big Lots Inc.*, 542 F.Supp.3d 343, 350 (W.D. Pa. 2021) (holding that tax collection "is divorced

---

[7] Because we herein conclude that the plain language of Section 3(a) of the UTPCPL is unambiguous in excluding a merchant's collection of sales tax, we do not address the caselaw from other jurisdictions.   Notwithstanding, we note that the Superior Court's application of Section 1927 of the Statutory Construction Act is at odds with this Court's decision in *Toy v. Metropolitan Life Insurance Co.*, 928 A.2d 186 (Pa. 2007).   In *Toy*, this Court stated:   "In point of fact, the [UTPCPL] is not a uniform act, and the consumer protection laws that the States have enacted differ from one another in many respects." *Toy*, 928 A.2d at 203 n.20 (rejecting application of Section 1927 in interpreting UTPCPL). To the extent that Retailers ask this Court to analyze the uniformity of the UTPCPL's provisions piecemeal, we decline to do so here.

from private profit" and performed "on behalf of the Commonwealth's Department" for purposes unlike "profit, private gain, or greed")).

In addition, the Superior Court discussed *Meyer v. Community College of Beaver County*, 93 A.3d 806 (Pa. 2014), in which this Court considered whether the UTPCPL's definition of "person" includes political subdivision agencies. *See Meyer*, 93 A.3d at 808 (holding that political subdivision agencies are not "persons" under UTPCPL). Specifically, the Superior Court relied upon a concurring opinion authored by Chief Justice Castille in *Meyer*, which reasoned:

> "Trade or commerce" is mercantile activity in which the person engaged in that business is doing so for private profit which could motivate unfair or deceptive practices for private gain or, more accurately, private greed. All of the provisions of the [UTPCPL] are aimed at private businesses. The Community College is not engaged in the conduct of 'trade or commerce' but is carrying out a public responsibility with tax dollars to provide students with an affordable education to citizens of the Commonwealth. In other words, when a governmental entity is carrying out a public duty, it is not engaged in the conduct of a trade or commerce, but in the conduct of government.

*Id.* at 816 (Castille, C.J., concurring) (quoting *Meyer v. Cmty. Coll. of Beaver Cnty.*, 30 A.3d 587, 601-02 (Pa. Cmwlth. 2011) (Pelligrini, J., dissenting)). The Superior Court acknowledged that "Chief Justice Castille wrote only for himself on this point" and that the meaning of the phrase was not before the Court. *Garcia*, 293 A.3d at 259. Notwithstanding, the Superior Court found Chief Justice Castille's reasoning to be persuasive and supportive of its conclusion.

Ultimately, the Superior Court concluded that "the unambiguous language of the operative provisions of the UTPCPL, its purposes . . . , the dictionary definition of 'conduct', the treatment of sales tax under the Pennsylvania Code, . . . persuasive authority from other jurisdictions," and Chief Justice Castille's concurrence in *Meyer* all supported the conclusion that the collection of sales tax is not in the conduct of any trade

or commerce. *Id.* at 260. Rather, the Superior Court concluded that the collection of sales tax "is a statutory obligation *attendant to* the conduct or commerce." *Id.* at 256 (citing 72 P.S. § 7202(a)) (emphasis added).

Judge McLaughlin filed a concurring opinion, which received unanimous joinder. The opinion served only to distinguish from the majority's holding a hypothetical case where "a retailer deceptively collects a charge that the retailer terms a 'sales tax' and keeps the proceeds of the 'tax' for the retailer's own enrichment[,] rather than remit them to the Commonwealth." *Id.* at 262 (McLaughlin, J., concurring) (quoting *Feeney*, 908 N.E.2d at 771 n.37). Judge McLaughlin clarified that the Superior Court's decision "expresses no opinion on whether [that] case . . . would be actionable under the UTPCPL." *Id.*

## II. ISSUE

Garcia filed a petition seeking this Court's discretionary review, which we granted to consider the following issue, as stated by Garcia:

> Did the panel's precedential opinion erroneously hold that the unfair or deceptive miscollection of sales tax does not occur "in the conduct of any trade or commerce" as contemplated by the [UTPCPL], misinterpreting the statute and opening the proverbial door for all manner of unfair and deceptive practices in connection with the collection of sales tax and other regulatory compliance, a question of first impression and substantial public importance?

*Garcia v. Am. Eagle Outfitters, Inc.*, 306 A.3d 1289 (Pa. 2023) (per curiam).

## III. DISCUSSION

The issue presented in this case involves a matter of statutory interpretation. Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 688 (Pa. 2020). To the extent that we must review the Superior Court's order directing the trial court to sustain the preliminary objections in the nature of a demurrer, our standard and scope of review is

likewise *de novo* and plenary, respectively. *Ladd v. Real Est. Comm'n*, 230 A.3d 1096, 1103 (Pa. 2020). Because a demurrer challenges the legal sufficiency of a pleading, it "should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted." *Id.* (quoting *Yocum v. Pa. Gaming Control Bd.*, 161 A.3d 228, 234 (Pa. 2017)). In evaluating the legal sufficiency of the pleading, we must "accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." *Id.* (quoting *Mazur v. Trinity Area Sch. Dist.*, 961 A.2d 96, 101 (Pa. 2008)).

## A. Parties' Arguments

The language at issue in this appeal is the phrase "in the conduct of any trade or commerce" as provided in Section 3(a) of the UTPCPL, 73 P.S. § 201-3(a). There is no dispute that Section 2(3) of the UTPCPL defines the terms "trade" and "commerce" as "the advertising, offering for sale, sale or distribution of any services and any property." 73 P.S. § 201-2(3). The parties, therefore, offer competing interpretations for the phrase "in the conduct of" and, based thereon, disagree as to whether a merchant's collection of sales tax falls within the purview of the UTPCPL.

Garcia begins by arguing that "in the conduct of" is unambiguous and that the dictionary definitions of the individual words, alongside the "colloquial" or "ordinary usage" of the phrase, "includes an action or event related to, but not strictly being, the other action or enterprise." (Garcia's Br. at 18-19.) Alternatively, Garcia asserts that "in the conduct of" includes the "carrying on" of an action or enterprise, or any "act[] in service of operating [a] business." (Garcia's Reply Br. at 3.) Garcia further posits that the "specialized legal usage" confirms his interpretation. (Garcia's Br. at 19.) Namely, Garcia states that "the General Assembly uses the phrase . . . to denote a broader category of actions related to another action or enterprise." (*Id.* (citing Section 1825 of Pennsylvania Election Code,

Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3525 (prohibiting "any wilful fraud in the conduct of" election officials' duties); 62 Pa. C.S. § 531 (providing for debarment or suspension of person from consideration for award of government contract if person discriminates "in the conduct of business as a contractor"); 75 Pa. C.S. § 1336 (providing that vehicle dealers may use dealer registration plates "in the conduct of the dealer's administrative functions")).)

Garcia argues that other provisions of the UTPCPL, when read in concert, provide for a broader category of actions than Retailers suggest. Specifically, Garcia reiterates the UTPCPL's prohibition on unfair or deceptive practices that "occur *after* advertising, selling, and distributing goods," such as a merchant's failure to comply with the terms of a written warranty or the performance of substandard repairs. (*Id.* at 20 (emphasis in original).) Garcia suggests that a narrow interpretation of the phrase at issue "would render these provisions entirely nugatory."[8] (*Id.*) Based upon the foregoing, Garcia argues that the plain language of the UTPCPL unambiguously includes conduct "related to" trade or commerce.

Regarding general policy, Garcia criticizes the position taken by the Superior Court and notes that its presumption "that merchants will comply with their statutory obligations, and that the free market will protect consumers" is one "unshared by the UTPCPL and

---

[8] Garcia also identifies a regulation promulgated by the Attorney General's Bureau of Consumer Protection, which requires motor vehicle dealers "to forward to the proper Commonwealth agency amounts and forms tendered by a purchaser, such as sales tax and transfer and registration fees, within the time prescribed by law." (Garcia's Br. at 31 (quoting 37 Pa. Code § 301.4(a)(10) (providing failure to do so constitutes "unfair or deceptive acts or practices")).) Garcia argues that, under Retailers' interpretation of the UTPCPL, this regulation would be "illegal." (*Id.* at 32.) Retailers respond that "[t]his regulation has nothing to do with . . . collect[ing] sales tax." (Retailers' Br. at 42-43.) Rather, it addresses those "who unlawfully keep[] the money from the government." (*Id.* at 43.) As the present dispute does not involve this regulation, we do not speak on the propriety or enforceability of this regulation at this time.

the General Assembly." (*Id.* at 26.) Indeed, Garcia emphasizes that the purpose underlying the enactment of the UTPCPL was "to eliminate th[e] inequality of information [and] equalize the bargaining power between consumer and merchant." (*Id.* at 25.) Relative to sales tax, Garcia asserts that "a consumer is no more likely [than a merchant] . . . to know whether his purchase is subject to sales tax." (*Id.*) Garcia also disputes the Superior Court's presumption that there is no motive for merchants to overcharge sales tax. For example, Garcia argues that, without the risk of a costly UTPCPL verdict, merchants would be "incentivize[d]" to "miscollect tax[] and shift their regulatory compliance costs onto consumers." (*Id.* at 28.)

Garcia likewise rejects the "theory that complying with the law governing businesses is not really business." (*Id.* at 32-33.) Instead, Garcia asserts that "regulatory compliance is part and parcel to the sale of goods and services." (*Id.* at 22.) Moreover, Garcia asserts that if the UTPCPL excludes acts of regulatory compliance, the hypothetical forwarded by Judge McLaughlin of a merchant falsely charging money under the guise of a sales tax but retaining the funds for the merchant's own enrichment would be "impossible" to distinguish from the conduct described in Garcia's complaint. (*Id.*)

Regarding potential alternative remedies, Garcia acknowledges the refund procedure provided for in the Tax Reform Code, *see* Section 252 of the Tax Reform Code, 72 P.S. § 7252, but argues that the existence of an alternative remedy "has little to do with whether the UTPCPL provides one." (*Id.* at 29.) Notwithstanding, Garcia states that the administrative refund procedure "is largely illusory" because "the consumer's loss is not likely to justify his efforts before the Department." (*Id.* at 29-30.)

Finally, Garcia challenges the Superior Court's reliance on several "nonbinding expressions" of law. (*Id.* at 33-37.) Garcia argues that Chief Justice Castille's concurrence in *Meyer* was based upon "an issue neither raised nor briefed, . . . contained

no statutory interpretative analysis, and garnered not a single joinder." (*Id.* at 35.) Garcia further asserts that "*Blass* and *Feeney* are dogged by similar problems," and that *McLean* and *Lisowski* merely "repeat[] *dicta* and poor analysis." (*Id.* at 35-36.)

For these reasons, Garcia asks this Court to conclude that actions related to or in the service of operating a business, including a merchant's collection of sales tax, occur in the conduct of trade commerce.[9]

Retailers offer a more limited interpretation of the phrase, positing that, in ordinary usage, "in the conduct of" means "inside the doing of that thing." (Retailers' Br. at 17 (emphasis omitted).) In so arguing, Retailers specifically reject Garcia's proffered definition of "related to" due to the General Assembly's use of the phrase in other provisions of the UTPCPL. (*Id.* at 18 (citing Section 2(4)(xviii) of the UTPCPL, 73 P.S. § 201-2(4)(xviii) (prohibiting use of certain confessed judgment clause in "document related to a consumer transaction"); Section 9.3(b)(3) of the UTPCPL, 73 P.S. § 201-9.3(b)(3) (excluding from reimbursement veterinary fees "not directly related to the veterinarian's certification")).)

In support of their interpretation, Retailers note that the UTPCPL's enumerated list of unfair or deceptive acts "describe[] a series of falsities sellers could tell buyers to

---

[9] The Pennsylvania Association of Justice filed a brief on behalf of Garcia and in support of his position. Individuals Christopher Lisowski and Michael Barger also filed an amicus brief, raising an additional argument that the UTPCPL should be read *in pari materia* to the Fair Credit Extension Uniformity Act (FCEUA), Act of March 28, 2000, P.L. 23, 73 P.S. §§ 2270.1-.7 (prohibiting unfair or deceptive acts or practices regarding debt collection). Lisowski previously raised this argument before the United States District Court for the Western District of Pennsylvania. In rejecting Lisowski's argument, the district court explained that, "[u]nlike the UTPCPL, the FCEUA does not contain any 'trade or commerce' limitation . . . . Rather, the FCEUA simply declares that an *additional* category of conduct (*e.g.*, deceptive acts by for-profit municipal debt collectors) should *also* be actionable under the UTPCPL." *Lisowski*, 552 F.Supp.3d at 528 (emphasis in original). As the present matter does not address debt or otherwise fall under the purview of the FCEUA, we need not address any effect the FCEUA provisions might have on the UTPCPL at this juncture.

encourage them to buy products or pay more." (*Id.* at 19 (citing Section 2(4)(i)-(xxi) of the UTPCPL, 73 P.S. § 201-2(4)(i)-(xxi) (defining "[u]nfair methods of competition" and "unfair or deceptive acts or practices")).) Retailers argue that this "clear theme" of "[f]raud, unequal bargaining power, [and] exploitative merchants . . . all refer to improper *private gain* by sellers exacted from consumers in the marketplace." (*Id.* at 40 (emphasis in original).) By contrast, Retailers contend that the collection of sales tax "is the service of a government function" and distinct from "trade or commerce." (*Id.* at 12-14 (citing 72 P.S. § 7237(b)(1) (requiring merchants to "collect the tax . . . at the time of making the sale"); 61 Pa. Code § 31.2(3)-(4) (requiring merchants to state sales tax separately "in advertising or other price quotations" and prohibiting merchants from advertising that sales tax "will be absorbed . . . or not be charged")).)

Regarding a potential specialized legal usage, Retailers reject Garcia's "extractions from other statutes" and note that some "courts have declined to take Garcia's view" of other laws utilizing the phrase. (*Id.* at 19-20 (citing, *e.g.*, *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (holding that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" under 18 U.S.C. § 1962(c), "one must participate in the operation or management of the enterprise itself")).) Instead, Retailers support the Superior Court's interpretation of the "reasoned decision[s]" from other jurisdictions "construing analogous statutes," as well as the "[p]ersuasive . . . federal decisions" pertaining to Pennsylvania law. (*Id.* at 21, 27.)

Regarding potential alternative remedies, Retailers disagree that the refund process outlined in the Tax Reform Code is "illusory," noting their belief that "the General Assembly . . . believe[d] it to be adequate." (*Id.* at 37 (quoting Garcia's Br. at 29).) Retailers also note that "if a consumer elects not to pursue a refund . . . , that does not mean the remedy is nonexistent." (*Id.* at 38.) Moreover, Retailers emphasize that,

consistent with the statutorily provided refund process, "the Department is the proper place" to decide disputes involving the taxability of an item. (*Id.* at 32-33 (citing, *e.g.*, Section 270 of the Tax Reform Code, 72 P.S. § 7270(a) (charging Department with enforcement, as well as "authoriz[ing] and empower[ing]" Department to "prescribe, adopt, promulgate and enforce, rules and regulations . . . relating to . . . the collection of taxes . . . imposed by this article")).) The Department, however, is "not even a party to [UTP]CPL cases." (*Id.* at 34 (emphasis omitted).) To that end, Retailers suggest that actions under the UTPCPL challenging the taxability of an item might "conflict[] with" the Department's authority.[10] (*Id.*)

Regarding general public policy, Retailers argue that Garcia's position encourages retailers "to ignore the Department's guidance in favor of never collecting tax on arguable items." (*Id.* at 35.) Retailers highlight that this result would run counter to the presumption that the General Assembly intends "to favor the public interest as against any private interest." (*Id.* at 45 (quoting 1 Pa. C.S. § 1922) (emphasis omitted).) Consistent with this presumption, however, Retailers note that "robust collection of sales tax *is* the 'public interest'" and does not lend itself to a "private interest." (*Id.* (emphasis in original).)

Finally, Retailers insist that the Superior Court "announced no broad exemption from the [UTP]CPL for 'regulatory compliance.'" (*Id.* at 45.) Instead, the Superior Court merely recognized that the unique structure of sales tax laws falls outside of the scope of the UTPCPL. Retailers further emphasize that, acting in accordance with the duties imposed upon it by such laws, retailers are "act[ing] as agents of the government, collect[ing] government money, and remit[ting] [that money] to the government." (*Id.*

---

[10] Indeed, the Department has previously taken the position that "the prosecution of [a UTPCPL] lawsuit [challenging the taxability of an item] invades the Department's province as the sole entity responsible for the assessment, enforcement, and collection of sales tax." *Stoloff v. Neiman Marcus Group, Inc.*, 24 A.3d 366, 368 n.2 (Pa. Super. 2011).

at 45-46.) By contrast, Retailers argue that the hypothetical presented by Judge McLaughlin below, wherein a merchant "steal[s] people's money under the guise of collecting tax[,] would presumably not be considered collecting sales tax at all, but simply . . . fraud." (*Id.* at 46.)

For these reasons, Retailers agree with the decision of the Superior Court and ask that this Court clarify that complaints alleging the miscollection of sales tax are not cognizable under the UTPCPL.[11]

## B. Analysis

Before analyzing the relevant language of the UTPCPL, it is helpful to discuss the legal framework associated with a merchant's collection of sales tax. As this Court has explained regarding the predecessor statutes,[12] Pennsylvania law "places upon the vendors at retail sales . . . the duty of collection and remission of the sales tax." *Commonwealth v. Shafer*, 202 A.2d 308, 311 (Pa. 1964); *see also Blauner's v. City of Phila.,* 198 A. 889, 892 (Pa. 1938) (discussing Commonwealth's power to impose duty of tax collection upon merchants). Specifically, Section 237(b)(1) of the Tax Reform Code mandates:

> Every person maintaining a place of business in this Commonwealth and selling or leasing tangible personal property or services, . . . the sale or use of which is subject to tax shall collect the tax from the purchaser or lessee at the time of making the sale or lease, and shall remit the tax to the [D]epartment . . . .

72 P.S. § 7237(b)(1).

---

[11] The Retail Litigation Center, the Pennsylvania Retailers' Association, and the Council on State Taxation each filed an amicus brief on behalf of Retailers and in support of their position.

[12] The Tax Reform Code replaced the Tax Act of 1963 for Education, Act of March 6, 1956, P.L. (1955) 1228, *as amended*, 72 P.S. §§ 3403-1 to 605 (repealed 1971).

This Court has previously stated that a merchant's actions in accordance with tax collection laws constitute the actions of "a collector or agent for the [C]ommonwealth" and that "[t]he money thus collected by [the merchant] as a . . . tax is a debt due the [C]ommonwealth." *Commonwealth v. Kaplan*, 166 A. 883, 883 (Pa. 1933) (holding that gasoline vendor was not liable for Commonwealth officer's negligence or delay in depositing checks remitting gasoline taxes); *see also* Section 225 of the Tax Reform Code, 72 P.S. § 7225 (providing that "[a]ll taxes collected . . . under color of" Tax Reform Code "shall constitute a trust fund for the Commonwealth, and such trust shall be enforceable against" collector). Appellate courts in this Commonwealth have consistently treated the collection of sales tax accordingly. *See Silberman v. Commonwealth*, 738 A.2d 508, 509 (Pa. Cmwlth. 1999) ("Vendors who collect sales tax in the Commonwealth are licensed by the Commonwealth to do so and act as agents of the Commonwealth."); *Aldine Apts., Inc. v. Dep't of Revenue*, 379 A.2d 333, 336 (Pa. Cmwlth. 1977) (referring to vendors as "mere[] collecting agents" for taxes); *Stoloff*, 24 A.3d at 373 ("[O]nce a purchaser pays the seller a tax, whether properly or improperly imposed, that tax effectively becomes Commonwealth property, whether the seller transfers it to the Commonwealth or holds it in a trust fund for the Commonwealth."). Federal district courts have likewise applied Pennsylvania law and concluded that "the retailer steps into the shoes of the Commonwealth and acts as a state agent" when collecting sales tax. *Lisowski*, 552 F.Supp.3d at 522.

With this understanding, we turn to the question of whether the collection of sales tax occurs "in the conduct of any trade or commerce." Section 3(a) of the UTPCPL, 73 P.S. § 201-3(a). This appeal requires us to interpret Section 3(a) of the UTPCPL, and, accordingly, we are guided in our analysis by the Statutory Construction Act, which provides that the object of all statutory interpretation "is to ascertain and effectuate the

intention of the General Assembly."  1 Pa. C.S. § 1921(a).  Generally, the plain language of the statute "provides the best indication of legislative intent."  *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017).  If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit."  *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa. C.S. § 1921(b)).

Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition."  1 Pa. C.S. § 1903(a); *see also Commonwealth v. Gamby*, 283 A.3d 298, 307 (Pa. 2022) ("To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions.").  In so doing, we "presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable[]' and that 'the General Assembly intends the entire statute to be effective and certain.'"  *Berner v. Montour Twp. Zoning Hearing Bd.*, 217 A.3d 238, 245 (Pa. 2019) (quoting 1 Pa. C.S. § 1922(1)-(2)).

The parties do not dispute that the collection of sales tax does not itself constitute "trade" or "commerce" as defined by Section 2(3) of the UTPCPL, 73 P.S. § 201-2(3). Consequently, we consider the extent to which the phrase "in the conduct of" might provide for a broader category of actions covered by the UTPCPL's prohibition on unfair or deceptive acts or practices.  Merriam-Webster's dictionary defines "conduct" as "the act, manner, or process of carrying out (as a task) or carrying forward (as a business, government, or war)."  *Conduct*, Webster's Third New International Dictionary 473 (1993).

Accepting this common usage of the phrase, Section 3(a) of the UTPCPL prohibits unfair or deceptive acts or practices in the carrying forward of any trade or commerce. The inquiry then becomes whether a merchant's collection of sales tax occurs in the carrying forward of advertising, offering for sale, sale, or distribution of any service or property. We conclude that it does not.

Admittedly, a merchant's collection of sales tax occurs concurrent with a sale in a single, seamless transaction. Timing alone, however, is not determinative of the nature of conduct. It is undeniable that "[t]he sovereign power of taxation . . . is in the state." *In re Curtis' Estate*, 6 A.2d 283, 284 (Pa. 1939). It is similarly axiomatic that the funds raised through taxation are "for public purposes." *Olive Cemetery Co. v. Phila.*, 93 Pa. 129, 131 (Pa. 1880). By extension, when a merchant collects sales tax, it is executing its duty, imposed by the Commonwealth, for "the perpetuation and continuing vitality of government." *Lohr v. Saratoga Partners, L.P.*, 238 A.3d 1198, 1210 (Pa. 2020) (quoting *Cedarbrook Realty, Inc. v. Nahill*, 399 A.2d 374, 379 (Pa. 1979)) (discussing purpose and "importance of the tax collection process"). Relatedly, a merchant's miscollection of sales tax does not alone transform the nature of this conduct, nor does it permit the merchant to retain the improperly collected funds. Rather, "that tax effectively becomes Commonwealth property, whether the seller transfers it to the Commonwealth or holds it in a trust fund for the Commonwealth." *Stoloff*, 24 A.3d at 373.

Furthermore, Pennsylvania law maintains separation between a merchant's actions in trade or commerce—as defined by the UTPCPL—and its role as an agent of the government. Indeed, the Pennsylvania Code requires an explicit distinction between the advertising of a product's price and the sales tax due. *See* 61 Pa. Code § 31.2(3) ("A vendor may neither advertise nor otherwise state that the tax or any part thereof will be absorbed by the vendor or not be charged."); 61 Pa. Code § 31.2(4) ("When referred to

in advertising or other price quotations, the tax shall be separately stated."). Similarly, Section 237(b)(1) of the Tax Reform Code instructs merchants to collect sales tax "at the time of making the sale," impliedly treating the collection of sales tax as something distinct from "the sale." 72 P.S. § 7237(b)(1). In light of these provisions and the unique nature of taxation, a merchant's collection of sales tax is best understood as "a statutory obligation *attendant to*," but not within, the conduct of any trade or commerce. *Garcia*, 293 A.3d at 256 (citing 72 P.S. § 7202(a)) (emphasis in original). In other words, a merchant acting at the behest of the Commonwealth, as an agent thereof, is engaged not "in the conduct of a trade or commerce, but in the conduct of government." *Meyer*, 93 A.3d at 816 (Castille, C.J., concurring) (quoting *Meyer*, 30 A.3d at 602 (Pelligrini, J., dissenting)).

Accordingly, while we recognize that Section 3(a) of the UTPCPL might prohibit unfair or deceptive acts or practices within a broader category of circumstances than the advertising, offering for sale, sale, or distribution of property or services alone, we conclude that it cannot be so broad as to encompass actions taken by a merchant in its collection of sales tax. Because we rely upon the unique structure of the laws concerning the collection of sales tax to reach this conclusion, we do not hereby address the actionability of a complaint regarding duties imposed by other regulations or statutes, nor do we address the actionability of a complaint alleging improper retention of sales tax or a disingenuous charge labeled as a sales tax. *See, e.g.*, *Van v. LLR, Inc.*, 500 F.Supp.3d 927, 932 (D. Alaska 2020) (describing allegations that merchant knowingly instituted and continued improper and unlawful collection of sales tax based upon location of retailer and not purchaser). Instead, we address only those complaints that relate to a merchant's collection of sales tax on an item, whether proper or improper, in attempted compliance with its duty under the law.

## IV. CONCLUSION

We hold that a merchant's collection of sales tax does not occur "in the conduct of any trade or commerce" as that phrase is used in Section 3(a) of the UTPCPL. Accordingly, we affirm the order of the Superior Court.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht, Mundy, and McCaffery join the opinion.